859 So.2d 264 (2003)
William A. RAY, et al., Plaintiffs-Appellants,
v.
CITY OF BOSSIER CITY, et al., Defendants-Appellees.
No. 37,708-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2003.
*267 Walker, Tooke & Lyons by Henry C. Walker, H. Clay Walker, Shreveport, for Appellant.
Cook, Yancey King & Galloway by Kenneth Mascagni, Shreveport, Robert Kennedy, Colfax, for Appellee.
Before BROWN, C.J., PEATROSS, DREW and MOORE, JJ., and TRAYLOR, J. Pro Tem.
BROWN, C.J.
The trial court granted defendants' motions for summary judgment and summarily dismissed plaintiffs' claims. For the following reasons, we affirm in part and reverse in part.
Factual and Procedural Background
On March 22, 2001, William A. Ray and Thomas M. Patten filed suit against the *268 City of Bossier City, Danny R. Dison, James D. Hall, David Jones, and Michael Halphen (collectively referred herein as "the City"), claiming that they were constructively discharged from their jobs as Bossier City Police Officers[1] in retaliation for engaging in protected activity.
On October 23, 2002, all defendants filed motions for summary judgment, which were scheduled for a hearing on November 14, 2002; plaintiffs' attorney was not served until October 28, 2002.[2] Under La. C.C.P. art. 966 and applicable Louisiana State District Court Rules 9.9(d) and 9.10(c), plaintiffs were required to have served counter affidavits on opposing counsel no later than four days before the hearing (November 10 was a Sunday and the 11th was Veterans' Day, a legal holiday). Defendants had attached 41 exhibits (affidavits, depositions, statements, and documents) in support of their motions.
On November 12, plaintiffs filed a "Motion for Extension to Respond to Defendant's Summary Judgment Motions." This motion to extend was also set for argument on November 14. On that date, the trial court made the following ruling:
...I would allow you [plaintiffs] to file a written response, but would not allow you to file any counter-affidavits. In other words, I'd take the position that I would just decide the case on what has already been offered into evidence, or affidavits, or depositions that are contained in the record, ... I would merely allow you a brief period of time toto write a response in the form of a memo, but not in the responsenotbut not to allow you to offer any additional affidavits
* * *
[W]hen I say affidavits, any additional evidence.
(Emphasis added).
On November 22, 2002, plaintiffs filed an opposition brief and attached 15 exhibits, claiming that these exhibits, which primarily were excerpts from depositions, had all been produced in discovery. On December 10, 2002, the trial court granted defendants' motion to strike all of plaintiffs' exhibits. Plaintiffs claim never to have been notified of this ruling. On February 3, 2003, the trial court granted defendants' motions for summary judgment and dismissed all of plaintiffs' claims. Plaintiffs appealed.
The 15 exhibits stricken by the trial court are not in the record. Therefore, plaintiffs attached 13 exhibits to their original appellate brief. The City moved in this court to strike these exhibits and the portions of the brief which refer to them. Claiming to have never received notice of the interlocutory ruling by the trial court striking their exhibits, plaintiffs moved for a stay of the proceedings to seek supervisory review of the trial court's granting of the City's original motion to strike. This court denied both the City's motion to strike and plaintiffs' motion for stay.
Discussion
At the time in question, Danny R. Dison was the Chief of the Bossier City Police Department, James D. Hall was the City Attorney for Bossier City, David Jones was a member of the City Council for Bossier City, and Michael Halphen was the Public Information Officer for the Bossier City Police Department.[3]
*269 Plaintiffs contend that Dison, Hall, Halphen, and Jones all conspired to terminate their employment in realiation for statements plaintiffs had made concerning Halphen and Jones driving while under the influence of alcohol. Plaintiffs contend that after Jones filed a harassment claim against them, an Internal Affairs ("IA") investigation ensued and thereafter, Chief Dison coerced Patten now resign and Ray to retire. Ray and Patten now claim that they were constructively discharged.[4]
The City claims that plaintiffs solicited other officers to make a stop or arrest of Halphen and Jones "on the basis of created probable cause or suspicion." The city correctly contends that such solicitation is an abuse of police power and is not a constitutionally protected activity.
Standard of Review for Summary Judgment
A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 B. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of all except certain disallowed actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Magnon v. Collins, 98-2822 (La.07/07/99), 739 So.2d 191. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1).
The mover may point out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. The burden then shifts to the plaintiff who must demonstrate that he has evidence which if believed would support the essential elements of his claim. La. C.C.P. art. 966 C(2); Hardy v. Bowie, 98-2821 (La.09/08/99), 744 So.2d 606. Mere speculation is not sufficient. Babin v. Winn-Dixie La. Inc., 00-0078 (La.06/30/00), 764 So.2d 37. Appellate review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.02/29/00), 764 So.2d 226; Belt v. Wheeler, 36,585 (La.App.2d Cir.12/18/02), 833 So.2d 1256; McEachern v. Mills, 36,156 (La.App.2d Cir.08/16/02), 826 So.2d 1176. Thus, the appellate court asks the same questions the trial court asked in determining whether summary judgment was appropriate. Magnon, supra.
Appellate Evidentiary Record
We must first address the trial court's rejection of exhibits submitted by plaintiffs in opposition to the summary judgment motions.
As previously noted, the trial court allowed an extension of time for plaintiffs to submit an opposition memorandum. The trial court, however, specifically denied plaintiffs' motion for an extension of time to submit "counter affidavits." The trial court stated that it would consider depositions already submitted by defendants.
All of the exhibits submitted with plaintiffs' memorandum to the trial court were gathered during discovery and included excerpts from depositions given by plaintiffs and defendants. The request for an extension was clearly considered a motion for a continuance by the trial court. At *270 the November 14 hearing, the trial court stated to plaintiffs' counsel:
The Court: ... I think you filed a request for a continuance, didn't you?
Mr. Walker: Yes, your Honor.
The Court: And I converted the request for a continuance ... you asked for an ex parte continuance and I had hand-written in that I would convert that to a Rule to Show Cause....
Under the provisions of La. C.C.P. art. 1601, a continuance may be granted in any case if there is good ground therefor. The trial court has great discretion in granting or denying a motion for a continuance under this provision; that discretion will not be disturbed on appeal in the absence of a clear abuse of discretion. Demopulos v. Jackson, 33,560 (La.App.2d Cir.06/21/00), 765 So.2d 480. Whether a trial court should grant or deny a continuance depends on the particular facts of each case. Some factors to consider are diligence, good faith, and reasonable grounds. Id. Fairness to both parties and the need for orderly administration of justice are proper considerations in deciding whether to grant or deny a continuance. Gilcrease v. Bacarisse, 26,318 (La.App.2d Cir.12/07/94), 647 So.2d 1219, writ denied, 95-0421 (La.03/30/95), 651 So.2d 845.
Under the circumstances of this case, we find that the trial court abused its discretion in not granting a continuance to allow plaintiffs a reasonable time to file counter affidavits, depositions, and other documents.
In the instant case, although defendants have an important interest in having this case resolved, there is no indication that the continuance was sought for purposes of delaying resolution of this matter. The summary judgment motions were served on plaintiffs' attorney on October 28 with a hearing date to be 17 days later, on November 14. Under the procedural rules, plaintiffs had only 13 days to file counter affidavits and other evidence to show that genuine questions of material fact existed. On November 12, plaintiffs formally asked the trial court for an extension/continuance.
Although the lawsuit had been pending almost a year and a half, it was not until September 12, 2002, that the IA investigation report was ordered to be produced to plaintiffs. In brief, defendants recognize that this IA report is essential to the resolution of this lawsuit. Thereafter, in a letter dated October 1, 2002, plaintiffs' counsel requested from defendants' attorney a date to take the deposition of Gerald Huddleston, an officer prominently mentioned in the IA report. The only response to this request was the filing of the motions for summary judgment. We further note that defendants supported their summary judgment motions with the IA report which included transcriptions of all the statements taken during that investigation.
Eight of plaintiffs' thirteen exhibits filed in this court are excerpts from depositions; out of the eight depositions, only three of the people deposed were not of parties to this action. These three depositions included only short excerpts of testimony from John Cox, John Jeter, and Alyssa Marlowe. Cox's deposition merely alluded to the allegation that Mike Halphen "liked to party" and offered speculation about rumors of him drinking alcohol and then driving. John Jeter's deposition simply referred to the unrelated misconduct of another police officer and the lack of disciplinary action being taken against that officer. Alyssa Marlowe's deposition discussed an allegation that Halphen had bought her a beer on one occasion, at which time she was under 21 years of age. As to these three exhibits, we agree with *271 defendants' brief "that (they) are, in fact, immaterial to a resolution of the legal questions presented by this case." The rest of plaintiffs' exhibits included a copy of the Internal Affairs report, which was also included within defendants' exhibits, two letters written by counsel for plaintiffs to the defense counsel, the trial court's written reasons for judgment, and the judgment itself.
The remaining five exhibits submitted by plaintiffs were excerpts from the depositions of the parties to this action. Complete statements from these parties had been submitted by defendants as part of the IA report. Additionally, defendants had submitted different excerpts from these same depositions in support of their motions for summary judgment.
Under these circumstances, the trial court clearly abused its discretion in denying the motion. Thus, because we review summary judgment rulings de novo, we will order that the trial court record be supplemented by plaintiffs' exhibits filed in this court.
Constructive Discharge, Freedom of Expression, and Louisiana Whistleblower Act
Ray and Patten contend that their respective resignation and retirement were not voluntary, but coerced. Therefore, they argue they were "constructively discharged" in retaliation for engaging in protected acts. We will discuss plaintiffs' constructive discharge, freedom of expression, and Louisiana "Whistle blower" claims.
To recover damages for constructive discharge, a plaintiff must prove that the employer intended to and deliberately created such intolerable working conditions that the employee was forced into involuntary resignation. (Emphasis added). Robinson v. Healthworks International, L.L.C., 36,802 (La.App.2d Cir.01/29/03), 837 So.2d 714, writ denied, 03-0965 (La.05/16/03), 843 So.2d 1120; Plummer v. Marriott Corp., 94-2025 (La. App. 4th Cir.04/26/95), 660 So.2d 843, writ denied, 95-1321 (La.09/15/95), 660 So.2d 460. Further, the trier-of-fact must find that the conditions were so severe that a reasonable person in the employee's shoes would have felt compelled to resign. Id. The burden is on the employee to prove constructive discharge. Plummer, supra; Boze v. Branstetter, 912 F.2d 801 (5th Cir.1990).
Under Louisiana's "Whistleblower Statute," an employer may not retaliate against its employees who advise an employer of violations of law. La. R.S. 23:967. This whistleblower statute provides:
A. An employer shall not take reprisal against an employee who in good faith, and after advising employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
* * *
C. For the purposes of this Section, the following terms shall have the definitions ascribed below:
(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing *272 an established employment policy, procedure, or practice or exempt an employee from compliance with such. (Emphasis added).
The whistleblower statute does not define "employer;" however, the term "employer" was precisely defined by Louisiana Employment Discrimination Law to require receipt of services by the employee in exchange for compensation to him. La. R.S. 23:302(2); Langley v. Pinkerton's Inc., 220 F.Supp.2d 575 (M.D.La.09/04/02). Specifically, "employer" is defined as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." La. R.S. 23:302(2). (Emphasis added). Courts have interpreted Section 23:302(2)'s definition of "employer" to apply in cases where employment status is at issue. Jackson v. Xavier University of Louisiana, 2002 WL 1482756 (E.D.La.2002), citing Jones v. JCC Holding Co., 2001 WL 537001 (E.D.La.2001).
In determining whether an employment relationship exists in other contexts, jurisprudence of this state has uniformly held that the most important element to be considered is the right of control and supervision over an individual. Savoie v. Fireman's Fund Ins. Co., 347 So.2d. 188 (La.1977); Cassey v. Stewart, 31,437 (La. App.2d Cir.01/20/99), 727 So.2d 655, writ denied, 99-0811 (La.04/30/99), 743 So.2d 209; Fuller v. U.S. Aircraft Ins. Group, 530 So.2d 1282 (La.App. 2d Cir.1988), writ denied, 534 So.2d 444 (La.1988), cert. denied, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989).
An employee of a public entity may not be discharged for exercising his First Amendment right to freedom of expression despite an at-will employment status. Cabrol v. Town of Youngsville, 106 F.3d 101 (5th Cir.1997); Thompson v. City of Starkville, Miss., 901 F.2d 456 (5th Cir.1990); Brawner v. City of Richardson, Tex., 855 F.2d 187 (5th Cir.1988); see also La. R.S. 42:1169. In order to prevail in a claim of retaliation, one must show that his speech was constitutionally protected, i.e., that it involved a matter of public concern; that his interest in commenting on the matters of public concern out-weighs the public employer's interest in promoting efficiency; and that his speech was a motivating or substantial factor in the termination decision. (Emphasis added). Cabrol, supra; Thompson, supra.
In light of jurisprudence and La. R.S. 23:302(2)'s definition of "employer," we agree with the trial court's finding that Halphen (as a Public Information Officer), Hall (as a city attorney), and Jones (as a Bossier City councilman) were not Ray and Patten's employers. Halphen, Hall, and Jones provided neither compensation nor benefits to plaintiffs. See Onyeanusi v. Times-Picayune Publishing Corp., 485 So.2d 622 (La.App. 4th Cir.1986). These three defendants had neither power of control nor power of dismissal over Ray or Patten. See Cassey, supra. Jones complained that plaintiffs were harassing him and the IA investigation ensued; Halphen provided the IA investigation with information concerning plaintiffs; and Hall gave Chief Dison a legal opinion that Ray and Patten should be fired. However, Jones, Halphen, and Hall had no control over the IA investigation or over any employee within the Bossier City Police Department. The record contains nothing to show that these parties did anything other than exercise their freedom of expression.
Unlike the other three defendants, Chief Dison and Bossier City clearly had the right of control and supervision over Ray and Patten. In exchange for the services *273 received, Bossier City provided compensation to these officers. See La. R.S. 23:302(2). Chief Dison had the power to employ or terminate them from the Bossier City Police Department. See Savoie, supra; Cassey supra. For these reasons, Chief Dison and Bossier City were Ray and Patten's "employer."
Plaintiffs were given an ultimatum and a minimum period of time to decide. Whether theirs was a "voluntary" decision is a genuine question of fact to be decided after evaluation of all the evidence. While it appears to have been a free choice made by Ray and Patten, there was also no real alternative. Plaintiffs claim "they were told that the decision to terminate had been made" prior to Chief Dison offering the choice. The motivation and intent of the parties are questions of credibility which should not be determined summarily.
According to Chief Dison's affidavit, his decision to provide plaintiffs with the option to voluntarily separate from the police department or be fired was made as a result of the IA investigation. The IA report includes a transcript of an interview by Captain Sproles of Officer Larry Hawkins, who stated that Ray approached him to set up Halphen for a DWI arrest. In this interview, Hawkins claimed that Ray told him that he would be able to "pretty well write (his) ticket to any place (he) wanted to go" within the Bossier City Police Department if Hawkins would arrange for Halphen's DWI arrest. Hawkins also stated that Ray informed him that Chief Dison was worried that Halphen would become the next police chief "unless somebody did something about it, and that getting arrested for DWI would keep him from becoming our next chief." Hawkins claimed that he was told to make up a story to legally justify a stop. Ray has specifically denied making such a statement to Hawkins.
The disclosure of misbehavior by public officials is a matter of public interest and, therefore, deserves constitutional protection. Thomas v. Harris County, 784 F.2d 648 (5th Cir.1986). The reporting of misconduct within a police department is speech addressing a matter of public concern. Brawner, supra. Even if the speech is not widely publicized, we find this to be the case. See Harrison v. Parker, 31,844 (La.App.2d Cir.05/05/99), 737 So.2d 160, writ denied, 99-1597 (La.09/17/99), 747 So.2d 565, in which this court found that a sheriff's department employee's reports of allegedly illegal or unethical conduct within the sheriff's office, namely using inmates to do personal work for or on behalf of deputy sheriffs, dealt with matters of public importance for purposes of the employee's wrongful discharge claim, alleging that he was retaliated against for exercising his First Amendment rights.
It is usually not a function of the trial court on a motion for summary judgment to weigh conflicting evidence of material fact; additionally, a motion for summary judgment is usually not appropriate for disposition of cases requiring judicial determination of subjective facts, such as motive, intent, good faith, or knowledge. La. C.C.P. art. 966; Harrison, supra.
Hawkins' interview evokes questions regarding the events preceding the adverse employment action. These questions go to the credibility of Ray, Patten, and Officer Hawkins. Credibility of witnesses is a determination for a fact-finder to make. Reasonable minds could differ as to the import of the evidence in this case and particularly whether plaintiffs' complaints within the police department concerning Jones and Halphen were merely talk or an attempt to set up Jones and Halphen for a *274 false DWI arrest. Such a decision requires credibility determinations and a weighing of the evidence. While the trial court correctly dismissed the freedom of expression claim against Hall, Halphen, and Jones, who were not plaintiffs' employer and who simply expressed their opinion about plaintiffs, there are genuine issues of material fact pertaining to the remaining defendants. This view is further supported by Captain Sproles' report. Captain Sproles concluded,
"I can find no evidence or testimony to show that Patten used this information to actually `set up' on Jones or Huckaby. I cannot find where any officer followed, watched, or asked anyone from another agency to stop Jones ... (or) where anyone from the Bossier City Police Department inquired into any information regarding Jones."
As to Halphen, Captain Sproles found that "there is also the question as to the alleged targeting of PIO Mike Halphen." Captain Sproles stated that this allegation surfaced when Halphen received information (about a set up) from an unidentified source which Captain Sproles could not "give total reliability to." Captain Sproles did not conclude that a criminal act had not been proven and recognized that credibility decisions had to be made.
The trial court erred in granting summary judgment in favor of Chief Dison and Bossier City on the issues of constructive discharge, freedom of expression, and the whistleblower statute. We emphasize that this court expresses no credibility opinion on these issues.
Equal Protection
Citing Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), Ray and Patten claim that although they are not in a protected class, "they have been subjected to class-of-one equal protection discrimination" because of differential treatment.
Our research reveals that Louisiana jurisprudence does not recognize an equal protection claim in the context of only a single member, or a class-of-one plaintiff. Nonetheless, a plaintiff has the right to pursue a federal claim in a state court. Spradlin v. Acadia-St. Landry Medical Foundation, 98-1977 (La.02/29/00), 758 So.2d 116. Although a federal claim in the context of a single member class is recognized, a plaintiff must show that he has been intentionally singled out and treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Village of Willowbrook, supra.
Plaintiffs have failed to produce any support that they can make the requisite showing that others who were similarly situated within the police department were treated differently than they were. Plaintiffs offered only Officer Jeter's deposition statement that another officer offered a cigarette to a juvenile, had a domestic quarrel, and was not disciplined. The trial court correctly granted summary judgment in favor of all of the defendants with regard to the equal protection claim.
Defamation
Ray and Patten have asserted a separate claim against Jones for defamation. They claim that Jones made three public defamatory statements against them after they filed this lawsuit.
One of the alleged defamatory statements made by Jones was made on March 23, 2001; he was quoted in The Times as referring to plaintiffs as "two rogue cops caught breaking the law." Jones was also quoted in Bossier Press Tribune on March 26, 2001, as stating, "[W]hat you have here are vigilante rogue cops hunting people *275 down. It doesn't get any dirtier than that." Finally, during an interview with a local television news reporter, Jones stated:
"Leadership is a contact sport. It's garbage like this that keeps people from participating in public service. These officers have a hard time following departmental procedure and also have trouble telling the truth."
The reference to Ray and Patten as "garbage" would be considered an exageration, or a hyperbole, as no one would literally consider them to be refuse. Likewise, references to plaintiffs as "rogue cops" could not reasonably be interpreted as stating an actual fact. These statements are merely the expressed subjective opinions of Jones. While such comments are likely upsetting to the subjects to which they refer, the United States Supreme Court has stated that "debate on public issues should be uninhibited, robust, and wide-open and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964). We find that Jones was not attempting to assert objective facts about Ray and Patten; instead, he was stating his own personal comments about the two men. Therefore, Jones' speech was constitutionally protected.
The First Amendment freedoms afford, at the very least, a defense against defamation actions for expressions of opinion. Fitzgerald v. Tucker, 98-2313 (La.06/29/99), 737 So.2d 706; Mashburn v. Collin, 355 So.2d 879 (La.1977). A pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation. Bussie v. Lowenthal, 535 So.2d 378 (La.1988). That is because falsity is an indispensable element of any defamation claim, and a purely subjective statement can be neither true nor false. Id. The opinion may be ostensibly in the form of a factual statement if it is clear from the context that the speaker did not intend to assert another objective fact but only his personal comment on the facts which he had stated. (Emphasis added). Mashburn, supra. Another form of protected speech is hyperbole, which cannot reasonably be interpreted as stating actual fact. Greenbelt Cooperative Publishing, Ass'n v. Bresler, 398 U.S. 6,90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); Baxter v. Scott, 37,092 (La.App.2d Cir.05/16/03), 847 So.2d 225.
A cause of action for defamation arises out of a violation of La. C.C. art. 2315. Fitzgerald, supra. Defamation involves the invasion of a person's interest in his or her reputation and good name. Id., Sassone v. Elder, 92-1856 (La.1993), 626 So.2d 345. In order to prevail in a defamation action, a plaintiff must prove four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Fitzgerald, supra; Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552; see also Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196 (La. 1980).
However, when a public figure is the object of alleged defamatory words, the United States Supreme Court has held that the First Amendment limits the right of the public figure to recover damages for defamation. In New York Times Co., supra, the Supreme Court concluded that it is not enough for the public figure to prove that the statement sued upon is false. Because the First Amendment protects honest misstatements of fact that are *276 made regarding public figures, such plaintiffs must also prove that the statement was made with "actual malice."
A communication which contains an element of personal disgrace, dishonesty, or disrepute undoubtedly satisfies the definition of defamatory. Fitzgerald, supra; Trentecosta, supra. Nonetheless, not all defamatory statements are actionable. Rather, many statements are protected by the First Amendment's guarantee of freedom of speech. Id. Specifically, a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection. Romero v. Thomson Newspapers (Wisconsin), Inc., 94-1105 (La.01/17/95), 648 So.2d 866, cert. denied, 515 U.S. 1131, 155 S.Ct. 2556, 132 L.Ed.2d 810 (1995); Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Speech on matters of public concern enjoys enhanced constitutional protection. Id.; Dun & Bradstreet, Inc., v. Greenmoss Builders, Inc., 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985); Baxter, supra.
Plaintiffs urge that Jones' critical comments about them constituted actual malice because the statements were not based on any truthful foundation. In support of this assertion, they note that the conclusion reached by the IA investigation report was that "there was not a criminal violation."
Actual malice means that the defendant made the statement with knowledge that it was false, or with reckless disregard for the truth. New York Times Co., supra. To establish reckless disregard, the plaintiff must show that the false publication was made with a high degree of awareness of its probable falsity or that the defendant entertained serious doubts as to the truth of the publications. St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Actual malice is not shown merely by evidence of ill will or "malice" in the ordinary sense of the word; nor is it to be inferred from evidence of personal spite, an intent to injure, or a bad motive. Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989); Tarpley v. Colfax Chronicle, 94-2919 (La.02/17/95), 650 So.2d 738.
We note that the IA investigation confirmed that Ray and Patten were involved to some degree with discussing stopping Jones and Halphen if they were driving under the influence of alcohol.[5] Jones was *277 aware of this unfavorable information concerning Ray and Patten. We acknowledge that there had been an antagonistic relationship between plaintiffs, as officers of the Bossier City Police Union and Jones, as a City Councilman. However, ill will alone is insufficient to establish that there was actual malice. See HarteHanks Communications, Inc., supra; Tarpley, supra. Based upon the information that the IA report revealed and based upon what Jones had been told, there is absolutely no evidence to show that Jones felt that the statements he made were not true. Considering the fact that Jones was aware of the results of the IA investigation, which he had kindled to begin with, he had a truthful foundation upon which to base his comments. Ray and Patten have failed to make any showing of actual malice on the part of Jones. The trial court correctly granted summary judgment in favor of Jones regarding plaintiffs' defamation claim.
Exhaustion of Civil Service Remedies
Citing La. Const. Art. X, § 12, the City urges that Ray and Patten failed to exhaust state civil service review; therefore, it argues that plaintiffs waived their right to challenge the voluntariness of their respective resignation and retirement. We note that after Ray retired and Patten resigned, Ray demanded a hearing before the Bossier City Municipal Fire and Police Civil Service Board ("the Board"). He argued that he was constructively discharged from the police department. The Board rejected his complaint. Patten never sought any type of civil service review. While Ray could have appealed the Board's decision, he did not. Instead, he and Patten filed the instant action with the district court.
La. Const. Art. X, §§ 1-15, or "Part I," pertains to state and city civil service employees other than police officers. La. Const. Art. X, §§ 16-20, or "Part II," governs the police and fire civil service. Section 19 provides, in pertinent part:
Nothing in Part I of this Article authorizing cities or other political subdivisions... shall authorize the inclusion in a city civil service system of fireman and policeman in any municipality having a population greater than thirteen thousand but fewer than four hundred thousand and operating a regularly paid fire and municipal police department ... Such fireman and policeman are expressly excluded from any such system.
Further, Louisiana's Whistleblower Statute, La. R.S. 23:967, provides in Part:
B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
We are dealing with constitutionally protected activities. Therefore, we find that the State Civil Service Commission does not have exclusive jurisdiction and plaintiffs need not have first exhausted their claims before the Board prior to filing suit in district court. We also note that the proper procedural vehicle to raise the issue of failure to exhaust administrative remedies would have been via an exception of prematurity pursuant to La. C.C.P. art. 926 A(1). However, defendants failed to employ such procedure. Therefore, the City's claim regarding Ray and Patten's *278 failure to exhaust administrative remedies is without merit.
Conclusion
For the foregoing reasons, we AFFIRM the trial court's grant of summary judgment in favor of Michael Halphen, James Hall, and David Jones. We affirm the grant of summary judgment as to all defendants on the equal protection claim; however, we REVERSE the trial court's grant of summary judgment in favor of Chief Dison and the City of Bossier City on the other claims. Judgment of the trial court is AFFIRMED IN PART AND REVERSED IN PART. Costs are assessed equally between plaintiffs and the City of Bossier City.
PEATEROSS, J., concurs.
MOORE, J., dissents with written reasons.
DREW, J., dissents.
MOORE, J., dissenting.
I concur in the majority opinion insofar as it affirms the summary judgments in favor of James D. Hall, Michael Halphen, and David Jones. I also concur in the majority's dismissal of the plaintiffs' claims under the "Whistleblower" statute, La. R.S. 23:967, as well as their claims of equal protection violations, La. Const. Art. 1, § 3.
I respectfully dissent, however, from the reversal of the remainder of the summary judgment. Upon de novo review, I find no genuine issue of material fact to support the claims that the City of Bossier City and Daniel Dison violated the plaintiffs' freedom of expression or constructively discharged them. I also find that the plaintiffs failed to exhaust their civil service remedies. I would affirm the summary judgments in toto.
As a procedural matter, majority's expansive treatment of the appellate record is plainly wrong. A mere two days before the scheduled hearing on the motions for summary judgment, the plaintiffs filed a "Motion for Extension to Respond to Defendants' Summary Judgment Motions." In my view, the district court properly denied this motion as untimely under La. C.C.P. art. 966 and Rule 9.9(b), URDC. However, because of various factors to which the majority alludes, the district court gave plaintiffs' counsel an additional eight days (until November 22, 2002) to file an opposition memorandum but specified that no counter-affidavits would be admitted. When counsel filed their memorandum on November 22, they attached 15 additional exhibits. Many of these were depositions not already in the record by attachments to timely motions. On the defendants' motion, the district court struck these attachments.
Considering that the suit had been pending for 18 months, some 18 depositions had been taken, and the motion for summary judgment had been filed nearly a month before November 22, I would find that the district court did not abuse its discretion in striking these attachments.
In order to circumvent this clearly appropriate exercise of the district court's discretionary power, the majority revises the plaintiffs' motion for extension of time as a motion for continuance, but the plaintiffs never filed any such motion. The majority further posits that granting a continuance would have worked no hardship on the defense. While that may be a reasonable assumption, this court should not supply motions that were never filed and arguments that were never raised, or substitute its own reasons for an evidentiary ruling in place of those of the district court. In short, the district court did not err in its handling of the motion for extension *279 of time or in striking the 15 attachments that were filed belatedly.
Without these additional attachments, the summary judgment evidence properly before the court negates any genuine issue of material fact as to all the plaintiffs' claims. In support of their motion for summary judgment, the City and Chief Dison attached an Internal Affairs report prepared by Capt. Glen Sproles. The defendants also attached excerpts from the depositions of the plaintiffs, Chief Dison and Councilman Jones. This report, with its attachments, clearly shows that the plaintiffs' separations from the Bossier Police Department were voluntary; that the plaintiffs were found to be in violation the department's code of conduct; that they had grossly abused police power; and that they were given the opportunity either to resign or face severe and public disciplinary action. The fact that their options were unpleasant does not alter the fact that they resigned and that under the circumstances this was a voluntary decision on their part.
In my view, the City and Chief Dison successfully showed an absence of factual support for an essential element of the plaintiffs' claims. La. C.C.P. art. 966 C(2). The burden therefore shifted to the plaintiffs to produce some factual support sufficient to establish that they would be able to meet their burden of proof at trial. Harris v. Eckerd Corp., 35,135 (La.App. 2 Cir. 09/26/01), 796 So.2d 719. In my view, the plaintiffs utterly failed to meet this burden of production.
The majority hypothesizes that on a trial of the matter, the plaintiffs might be able to offer some evidence to contradict the findings of the Internal Affairs report, or that a jury might find the report to be unreliable. However, mere speculation that a jury might disbelieve the mover's witnesses is not sufficient grounds to defeat a properly supported motion. Babin v. Winn-Dixie La., 00-0078 (La.06/30/00), 764 So.2d 37; Allen v. State Farm Fire & Casualty Co., 36,377 (La.App. 2 Cir. 09/18/02), 828 So.2d 190, writ denied, 02-2577 (La.12/19/02), 833 So.2d 343. To reach a different conclusion from the district court requires us to indulge in mere speculation. Finally, a plaintiff may not rely on his own delinquency in conducting discovery as a basis for denying a properly supported motion for summary judgment. Demopulos v. Jackson, 33,560 (La.App. 2 Cir. 06/21/00), 765 So.2d 480, at fn. 4, and citations therein.
In short, the defendants' motions for summary judgment are fully and meticulously supported. They completely negate any genuine issues of material fact and expose the plaintiffs' claims for the specious allegations they are. I would affirm the summary judgments in toto, and I respectfully dissent from the majority's failure to do so.
NOTES
[1] Patten claimed that he was forced to resign and Ray was forced to take early retirement.
[2] Note, in addition to requesting service, appellees' counsel certified that he mailed a copy of all motions to plaintiffs' attorney on October 23.
[3] Dison retired and Halphen is currently the Chief of the Bossier City Police Department.
[4] Ray and Patten together asserted a claim for alleged violations of their right to procedural due process under La. Const., Art. I, § 2. The trial court dismissed the due process claim, and neither Ray nor Patten raised this issue on appeal.
[5] In his appellate brief, Jones states that the following information was revealed by the IA investigation.

(1) Union members were disgruntled over the absence of a $600 per month pay increase, and were angry with Jones.
(2) During the political turmoil over the police pay increase, Patten asked police officers where Jones "hung out."
(3) During this same period of time, Patten discussed Jones with John Lewis at an IHOP restaurant. Patten indicated to Lewis that the best way to handle Jones would be to get another law enforcement agency, such as the State Police, to stop Jones for DWI.
(4) Patten again discussed this same scenario with Lewis in the police department parking lot.
(5) At a union gathering, Patten spoke openly with others about "stopping (Jones) for drinking." In that gathering, there was discussion about where city council members lived and where Jones went to drink.
(6) Patten discussed stopping Jones on at least five occasions.
(7) Patten admitted that Ray gave him a note identifying Halphen's personal vehicle and that Ray told him when and where Halphen would be on a certain night.
(8) Ray contacted another police officer, Larry Hawkins, and advised him that Hawkins "would do well for himself" if he arrested Mike Halphen for DWI. Ray informed Hawkins when and where Halphen would be located, as well as a story to justify the stop; i.e., that Hawkins had been flagged down by someone in a Cadillac who allegedly had seen Halphen driving drunk.