Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,841-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SHERITA ANN COOKS                                    Plaintiff-Appellant

versus

THE CITY OF SHREVEPORT                               Defendants-Appellees
through its MAYOR, OLLIE
TYLE, THE SHREVEPORT FIRE
DEPARTMENT CHIEF, EDWIN
SCOTT WOLVERTON, CHIEF
OF COMMUNICATIONS,
KATHY OWENS RUSHWORTH,
CHIEF OF COMMUNICATIONS,
KIM LASHUN TOLLIVER

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 604705

Honorable Craig Owen Marcotte, Judge

* * * * *

GILLEY & GILLEY                                      Counsel for Appellant
By: Patricia A. Dordan Gilley

CARMOUCHE, BOKENFOHR,                               Counsel for Appellees,
BUCKLE & DAY, PLLC                                  City of Shreveport, The
By: Nichole M. Buckle                               Shreveport Fire
                                                    Department Chief,
                                                    Edwin Scott Wolverton,

Chief of Communications, Kathy Owens Rushworth, Chief of Communications, Kim LaShun Tolliver

* * * * *

Before STONE, COX, and ELLENDER, JJ.

**STONE, J.**

This appeal arises from the First Judicial District Court, the Honorable Craig Marcotte presiding. The plaintiff, Sherita Cooks, appeals the trial court's dismissal of all her claims with prejudice via grant of the ("defendant"), City of Shreveport's motion for summary judgment ("MSJ").[1] For the reasons stated herein, we affirm.

## FACTS AND PROCEDURAL HISTORY

This case stems from the plaintiff's employment as a financial accreditation manager with the Shreveport Fire Department, which began in June 2014. In or around December 2014, the plaintiff's immediate supervisor, Chief of Communications, Kathy Rushworth ("Chief Rushworth"), allegedly ordered the plaintiff to spend her personal money on official fire department business and indicated that plaintiff would be reimbursed from an "off the books" bank account known as the International CAD Consortium fund ("ICC fund"). It contained money that was to fund a consortium event; the event was later canceled, but the money was not refunded. The plaintiff alleged that her assistant, Ashley Wiggins ("Wiggins"), and Chief Rushworth, used the ICC fund as a "slush fund," and that Chief Rushworth instructed her to not open the ICC bank statements or mention the ICC fund to the finance auditor or Violet Anderson, the Assistant Chief of Communications. Allegedly as a result of the plaintiff's calling attention to the slush fund, she experienced a "hostile work environment" perpetrated by Wiggins and Chief Rushworth. However, as of March 2016, Chief Rushworth retired and was replaced by Chief Kim

---

[1] Former mayor Ollie Tyler is also a defendant. Her surname is misspelled as "Tyle" in the petition and on the jacket of the record.

Tolliver ("Chief Tolliver"). On April 4, 2016, due to stress allegedly caused by the hostile work environment, the plaintiff was transported by ambulance from work to the hospital with a blood pressure of 190/100. On April 14, 2016, Wiggins was transferred to another position where she would have no contact with the plaintiff.[2]

On April 18, 2016, the plaintiff began a sabbatical that lasted until the end of June 2016. Three days after beginning her sabbatical, the plaintiff reported the ICC fund and her mistreatment by Wiggins and former Chief Rushworth to Fire Chief Wolverton, and later to the city attorney office. The city attorney office investigated and determined that the plaintiff had indeed been subjected to a hostile work environment.[3]

Also, in April 2016, because of the stress that the hostile work environment and the slush fund matter allegedly caused her, the plaintiff voluntarily began counseling or psychiatry sessions pursuant to the city's employee assistance program ("EAP"). However, with only one exception, she was not allowed to use her sick leave to attend these sessions during the workday.[4] Furthermore, as previously stated, the plaintiff took a two-month sabbatical beginning in April 2016. It bears repeating that when the plaintiff

---

[2] In her brief to this court and her opposition to the defendant's MSJ, the plaintiff argues that the actions of Chief Rushworth and Ashley Wiggins were part of the grounds for the plaintiff's "constructive termination."

[3] Additionally, the city attorney instructed the plaintiff to stop pursuing the slush fund issue because it had been referred to the city's internal audit department.

[4] The entirety of the evidence that the plaintiff cites in support of her constructive termination claim consists of an April 2016 email exchange between her and Chief Tolliver wherein the plaintiff requested an explanation as to why she could not attend an EAP session during her lunch hour, even though it would take more than one hour when including travel time. The plaintiff offered to compensate the City for the time the session required in excess of the allotted one-hour lunch by taking sick leave. In response, Chief Tolliver granted the plaintiff permission to attend one session during her lunch hour, but stated that, thereafter, the plaintiff would have to adhere to the fire department's policy of requiring that EAP sessions take place after work hours.

returned to work in June 2016, both Chief Rushworth and Wiggins were no longer employed with the Shreveport Fire Department. The plaintiff did not quit her job until November 2016.

The City filed an MSJ asserting that the plaintiff cannot carry her burden of proving constructive termination (or other discipline or reprisal by the employer). The plaintiff asserts that the MSJ was erroneously granted because: (1) her evidence submitted for the purpose of the MSJ constituted prima facie proof of her claim; and (2) there was discovery regarding the secret account that remained outstanding, and a hearing pursuant to La. C.C.P. art. 1467(B) regarding that discovery was set but never took place.

## DISCUSSION

**Motion for summary judgment**

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791, 814. A genuine issue is one regarding which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

3

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Furthermore, the court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. C.C.P. art. 966(D)(2). Appellate "review of a grant or denial of a motion for summary judgment is de novo." *Jones v. Est. of Santiago*, 03-1424 (La. 4/14/04), 870 So. 2d 1002, 1006.

**Whistleblower statutes**

La. R.S. 42:1169, in relevant part, provides:

> Any public employee who reports…information which he *reasonably believes indicates a violation of any law or of any order, rule, or regulation* …or any other alleged acts of impropriety related to the scope or duties of public employment or public office within any branch of state government or any political subdivision *shall be free from discipline, reprisal, or threats of discipline or reprisal by the public employer for reporting such acts of alleged impropriety.* No employee with authority to hire, fire, or discipline employees, supervisor, agency head, nor any elected official shall subject to reprisal or threaten to subject to reprisal any such public employee because of the employee's efforts to disclose such acts of alleged impropriety. (Emphasis supplied).

The plaintiff also cites La. R.S. 23:967, which in relevant part, states:

4

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

…

C. For the purposes of this Section, the following terms shall have the definitions ascribed below:

(1) "Reprisal" includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section; however, nothing in this Section shall prohibit an employer from enforcing an established employment policy, procedure, or practice or exempt an employee from compliance with such.

Thus, to prevail under either statute, an employee must prove – among other things – she suffered discipline, reprisal, or threats thereof by the public employer. Termination of employment would certainly constitute discipline or reprisal.

Constructive termination (or discharge) occurs when the employer intentionally and deliberately creates such severely intolerable working conditions that a reasonable person in the employee's shoes would feel compelled to resign. *Ray v. City of Bossier City*, 37, 708 (La. App. 2 Cir. 10/24/03), 859 So.2d 264.  The burden is on the plaintiff to prove constructive discharge. *Id.*

**Constructive termination**

The plaintiff's summary judgment evidence falls far short of prima facie proof of constructive termination.  The entirety of the evidence that she cites in support of that claim consists of an April 2016 email exchange between her and Chief Tolliver wherein the plaintiff requested an

5

explanation as to why she could not attend an EAP session during her lunch hour, even though it would take more than one hour when including travel time. The plaintiff offered to compensate the City for the time the session required in excess of the allotted one-hour lunch by taking sick leave.[5]  In response, Chief Tolliver granted the plaintiff permission to attend one session during her lunch hour, but stated that, thereafter, the plaintiff would have to adhere to the fire department's policy of requiring that EAP sessions take place after work hours.

The plaintiff began roughly a two-month sabbatical later in April 2016.  She returned to work in June 2016 and claimed that her constructive termination occurred in November 2016 – i.e., almost 7 months after Wiggins had been removed from her position with the fire department, and roughly 8 months after Chief Rushworth had retired. After her return, Fire Chief Wolverton instructed the plaintiff to stop pursuing the ICC fund matter and stated that it was being handled by the city's internal audit department. As a matter of law, this does not and cannot establish a prima facie case for constructive termination.  Therefore, the plaintiff – as the party who would

---

[5] The email exchange regarding EAP is the only evidence cited specifically in support of constructive termination.  However, the plaintiff also asserts her ultimate conclusion that she is entitled to recovery under the whistleblower statute, which would include the constructive termination element; in support, she cites: (1) the Fire Department predisciplinary document created because of plaintiff's refusal to return to work; and (2) a document entitled Fire Employee's Rights which lists those rights and bears the plaintiff's signature. These items do not and cannot support the plaintiff's constructive termination claim. Beyond that, plaintiff merely makes *in globo* references to the 530 to 570 pages of "evidence" she filed with her opposition as supporting her whistleblower claim. This is an egregious violation of La. Unif. R. Ct. App. 2-12.4(A)(7) & (9), which require citations to specific page numbers of the record for support of a party's allegations and argument. Accordingly, this court may disregard the plaintiff's *in globo* references to her 530 to 570 pages of "evidence." La. Unif. R. Ct. App. 2-12.4(B)(3). Furthermore, we reiterate that even if all the factual allegations in the plaintiff's brief were adequately supported by *properly cited* summary judgment evidence, they still would not support her claim of constructive termination.

bear the burden of proof at trial – has failed to carry her burden of proving discipline or reprisal or threat thereof. La. R.S. 42:1169; La. C.C.P. art. 966(D)(1).

**Adequate discovery**

The plaintiff's second argument is that the trial court erred in granting summary judgment because the plaintiff did not have an opportunity for adequate discovery in that her discovery requests (requests for admission) relating to the details of the ICC fund were unsatisfied. This is a *non sequitur*: even if it is assumed that the details of the ICC fund that should have been – but were not – produced were most favorable to the plaintiff's case, the plaintiff nonetheless failed to support her claim of constructive termination. The details of the ICC fund are immaterial to the issue raised in the defendant's motion for summary judgment, i.e., plaintiff's inability to prove that she was constructively terminated or otherwise disciplined, subjected to reprisal, or threat thereof (as required for relief under La. R.S. 42:1169 and 23:967). The trial court was correct in granting summary judgment.

## CONCLUSION

The judgment of the trial court is **AFFIRMED.** All costs of this appeal are assessed to the plaintiff.