# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2020

Lyle W. Cayce
Clerk

No. 19-30550

IONA SANDERS,

   Plaintiff - Appellant

v.

CHRISTWOOD, a Louisiana Non-Profit Corporation, Improperly Named as Christwood L.L.C.,

   Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:[*]

Plaintiff Iona Sanders challenges the district court's summary judgment dismissal of her suit for intentional discrimination under two federal statutes and retaliation under Louisiana's Whistleblower Statute. We affirm the district court's dismissal of Sanders's discrimination claims, and we reverse as to the dismissal of her whistleblower claim and remand for further consideration.

---

[*] Judge Haynes concurs only as to Sections I – III.A. In Section III.B, the opinion holds that nonprofit organizations may be statutory "employers" under Louisiana's Whistleblower Statute. Judge Haynes would certify this issue to the Louisiana Supreme Court.

No. 19-30550

**I**

In 2008, Iona Sanders, who is African-American, began working for Christwood, L.L.C., a nonprofit corporation that owns and operates a continuing care retirement community in Covington, Louisiana. Sanders was promoted to the position of assisted living unit (ALU) director at some point between March 2015 and November 2016.[1] On December 4, 2016, Christwood notified Louisiana's Department of Health that Sanders was the new ALU director.

On December 19, 2016, a resident of the ALU wandered off the premises and was found three hours later with hypothermia. Christwood was required to file an incident report with the state within 24 hours.[2] Later that day, the nurse on duty, Ian Thompson, prepared a report and Sanders signed off on it. The report was submitted to Sanders's immediate supervisor, Tami Perry, who as residential health services director was responsible for overseeing Christwood's ALU, among other units.

Perry asked Sanders to work with Thompson to redo or revise the report by noon the next day, but Sanders believed it was illegal and inappropriate to require Thompson to make changes to the report and did not order him to do so. That night, Perry emailed Sanders, reminding her that the report was due the next day, December 20, at noon. According to Perry, Sanders called her on December 21 and said that she had not submitted the report. On December 24, Perry completed and submitted the incident report without Sanders's assistance.

On Friday, January 27, 2017, Perry and Christwood's Executive Director, the Reverend L. Stephen Holzhalb, decided to reassign Sanders from

---

[1] The parties dispute the precise date, but it is immaterial for our purposes.
[2] *See* LA. ADMIN. CODE tit. 48, § 6871C (2020).

2

No. 19-30550

the ALU director position to the quality assurance coordinator position in Christwood's skilled nursing unit. Holzhalb told Sanders that she was being reassigned but would retain the same pay, benefits, and hours.

Over the weekend, a nurse could not make her shift, resulting in a staffing shortage and a delay in the administration of medication to the ALU residents. Sanders did not notify Perry of the delay.

Sanders met with Perry and Holzhalb on Monday morning, telling them, "I'm not taking a demotion." After the meeting, Holzhalb told Perry that the medication delay was an additional reason to reassign Sanders, though by that point the decision had already been made. Later that day, Perry and Christwood's HR director, Ladonna Allen, prepared a letter stating that Christwood was reassigning Sanders due to her failure to file the incident report within the mandated timeframe and her failure to notify "Residential Health Services of a nurse call in and [delay in] medication delivery to independent residents." Perry and Allen met with Sanders and gave her the letter. After Sanders did not call in or show up to work for the next two days, Christwood, concluding that Sanders had voluntarily resigned, ended her employment.

In September 2017, Sanders filed the instant suit against Christwood.[3] In December 2018, Christwood moved for summary judgment, which the district court granted. Sanders, proceeding *pro se*, appealed.

---

[3] After counsel withdrew nine months into the suit, Sanders represented herself for the remainder of the case.

No. 19-30550

## II

We review a grant of summary judgment *de novo*.[4] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]

## III

Sanders asserts multiple claims of intentional discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as well as a claim of retaliation under Louisiana's Whistleblower Statute ("LWS").[6]

## A

To state a prima facie case of intentional discrimination under Title VII, Sanders must demonstrate that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group.[7]

Because Sanders provides no direct evidence of racial discrimination, we apply the *McDonnell Douglas* burden-shifting framework.[8] Under this framework, the plaintiff "carr[ies] the initial burden under the statute of establishing a

---

[4] *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016).

[5] FED. R. CIV. P. 56(a).

[6] Sanders also maintains that the Court should not consider unsigned or undated documents submitted by Christwood in support of its summary judgment motion. Sanders, however, neither objected to nor moved to strike these documents in the district court. As a result, her challenge to the evidence is waived. *See Auto Drive-Away Co. of Hialeah v. I.C.C.*, 360 F.2d 446, 449 (5th Cir. 1966).

[7] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). Because employment discrimination claims brought under § 1981 "are analyzed under the evidentiary framework applicable to claims arising under Title VII," we consider Sanders's § 1981 and Title VII claims together. *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

prima facie case of racial discrimination."[9] Once the plaintiff has met this burden, it "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."[10] If the employer has articulated such a reason, then the plaintiff must show that the stated reason "was in fact pretext."[11]

In essence, Sanders asserts four claims of intentional discrimination. The first is rooted in Christwood's failure to timely list her with the state as the ALU director. The remaining claims are for discriminatory pay, discriminatory demotion, and constructive discharge.

**1**

Sanders maintains that as early as 2015, Christwood was required under state regulations to notify the state that she was the ALU director. But even if Sanders is correct, she fails to explain how she was adversely affected. This claim fails.

**2**

Sanders provides two arguments in support of her discriminatory pay claim. Sanders argues that she was not paid the "directors' annual bonus." The record establishes that Sanders was not part of the "Director's Group," a group of about 15 senior leaders that met on a weekly basis, and was therefore ineligible for the "annual Director's bonus." There is no indication that Sanders' exclusion from the group was due to race. According to Christwood's HR director, Christwood was downsizing and reorganizing the group.

---

[9] *Id.* at 802.

[10] *Id.*

[11] *Id.* at 804. A plaintiff stating a discrimination claim may show either that the employer's stated reason was pretext or "that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

No. 19-30550

Sanders's presence in the Group was not needed because Perry was a group member and continued to oversee the ALU. Likewise, since the administrator of the skilled nursing unit was a group member, the unit's director of nursing—a position held by two white women during the relevant period—was not. Similarly, Christwood removed its directors of environmental services and of special projects, both white, from the group and added a single plant director to the group instead. These examples undermine Sanders's claim that she should have been a member of the director's group because her title had the word "director" in it. We also note that Sanders's replacement as ALU Director, a white woman, was not a member of the Director's Group either. We see no basis for concluding that these explanations are merely pretextual.

Last, Sanders argues that she was paid less than Perry. She concedes, however, that there is no evidence in the record on Perry's compensation. Without this information, Perry cannot serve as a valid comparator. We conclude that Sanders's discriminatory pay claim fails.

**3**

Sanders argues that her reassignment from ALU director to quality assurance coordinator was a discriminatory demotion. She also argues that as a result of this demotion, she was forced to resign and was constructively discharged. We assume *arguendo* that Sanders has made out prima facie cases of discriminatory demotion and constructive discharge.

In response, Christwood maintains that it reassigned Sanders due to her mishandling of the "mandatory reporting incident, including her failure to timely submit the incident report to the State and her refusal to obtain a clarified incident report." Sanders does not dispute that Christwood has produced a legitimate, non-discriminatory reason for her termination.

She instead attempts to establish pretext by proving discriminatory intent. First, she argues that only African-American employees—two certified

6

nursing assistants (CNAs) and herself—were terminated or demoted because of the December 19 incident, while white employees—Thompson and Perry—were not. The two CNAs are inapt comparators as they were terminated for falsifying documents related to the incident. There is no indication that any other employee falsified documents. Thompson is also an improper comparator, as Sanders was involved in the decision to issue him a written warning. According to Christwood's HR director, Sanders told her that she did not want to terminate Thompson.

Next, Sanders argues that Perry received preferential treatment, as she was not disciplined for refusing to send the report to the state. But Perry never refused to send the report; she ordered Sanders to submit a report, and when Sanders ultimately failed to comply, prepared and submitted the report herself.[12] We therefore affirm summary judgment for Christwood on Sanders's intentional discrimination claims.

## B

The Louisiana Whistleblower Statute provides: "An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law . . . [o]bjects to or refuses to participate in an employment act or practice that is in violation of law."[13] As the LWS does not define the term "employer," the district court looked to the Louisiana Employment Discrimination Law's (LEDL) definition of the term:

> (2) "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to

---

[12] We take no position as to whether Sanders was demoted for failing to submit the report or for refusing to comply with an unlawful order. Under either view, Sanders was not demoted due to race.

[13] LA. STAT. ANN. § 23:967A(3).

an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment. This Chapter shall not apply to the following:

. . .

(b) Employment of an individual by a private educational or religious institution or any nonprofit corporation . . . .[14]

Applying that definition and the exception for nonprofit corporations, the district court dismissed Sanders's LWS claim because Christwood, a nonprofit corporation, was not an employer under the statute. Sanders contends that the LEDL's definition of employer does not apply to the LWS.

As the Louisiana Supreme Court has not addressed this issue, we must make an "*Erie* guess" to determine what it would decide. "In making an Erie guess, we defer to intermediate state appellate court decisions, 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'"[15] Louisiana appellate courts have not considered whether the LEDL's exemption for nonprofit corporations applies to the LWS. They have, however, considered whether the LEDL's definition of an employer applies to the LWS.

Louisiana's appellate courts have adopted two different approaches to the LWS. The first traces back to a district court decision, *Dronet v. LaFarge Corporation*, which applied the Louisiana Civil Code's rules of construction to determine the meaning of "employer" under the LWS.[16] As one rule provides that the "words of a law must be given their generally prevailing meaning," the

---

[14] *Id.* § 23:302(2).

[15] *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).

[16] No. 00–2656, 2000 WL 1720547, at *1–*2 (E.D. La. Nov. 17, 2000.).

court relied on Black's Law Dictionary for the ordinary meaning of "employer": "[O]ne for whom employees work and who pays their wages or salaries."[17] Since a different rule instructs that "[l]aws on the same subject matter be interpreted in reference to each other," the court also drew on the LEDL's definition of "employer."[18] The court ultimately concluded that because the defendant was not an employer "in the traditional sense" or "within the meaning of the [LEDL]," it was not an employer under the LWS.[19] The court did not address whether the LEDL's exclusions would also apply.

In *Ray v. City of Bossier City*, Louisiana's Second Circuit, relying on *Dronet*'s progeny, applied the LEDL's definition of employer—a person or entity "receiving services from an employee and, in return, giving compensation of any kind to an employee"—to determine whether the defendant supervisors were "employers" under the LWS.[20] The court explained that the LEDL provides a precise definition of employer that has been applied by courts "in cases where employment status is at issue."[21] The court also pulled from Louisiana case law, which has "uniformly held" that when "determining whether an employment relationship exists in other contexts, . . . the most important element to be considered is the right of control and supervision over an individual."[22] It then applied both tests, which yielded the same results. In another case, the state's Fourth Circuit, with little

---

[17] *Id.* at *1 (quoting LA. CIV. CODE ANN. art. 11 (West 1999); BLACK'S LAW DICTIONARY 525 (6th ed. 1990)).

[18] *Id.* at *2 (quoting LA. CIV. CODE ANN. art. 13.).

[19] *Id.*

[20] 859 So. 2d 264, 272 (La. Ct. App. 2004) (emphasis omitted) (quoting LA. STAT. ANN. § 23:302(2)). *Ray* commanded full approval from only two members of the five-judge panel. Two judges dissented and one concurred.

[21] *Id.* (citing *Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575 (M.D. La. 2002); *Jackson v. Xavier Univ. of La.*, No. 01-1659, 2002 WL 1482756, at *6 (E.D. La. July 8, 2002); *Jones v. JCC Holding Co.*, No. 01-0573, 2001 WL 537001, at *3 (E.D. La. May 21, 2001)).

[22] *Id.*

explanation, expressly adopted *Ray*'s reasoning and held that the defendant was the employer, as it "received services" from the plaintiff and in exchange "gave compensation."[23]

A unanimous three-judge panel of Louisiana's Third Circuit took a different approach, declining to extend the LEDL to the LWS.[24] The court argued that the text of the LEDL indicates the legislature intended the statute's definitions to apply only to Chapter 3-A of Title 23, which does not house the LWS. The LEDL states that its definitions are "[f]or purposes of *this Chapter*."[25] It also says, "The provisions *of this Chapter* shall apply only to an *employer* who employs twenty or more employees," and "*This Chapter* shall not apply to . . . [e]mployment of an individual by. . . any nonprofit corporation."[26] Moreover, the text of the LWS does not incorporate the LEDL's definitions or indicate that the legislature intended to do so. The court also concluded that the LEDL and LWS have distinct purposes: "prohibit[ing] discrimination" versus "provid[ing] a remedy to employees whose employers retaliate against them for exercising their individual right to report the employers' violations of state law."[27] As a result, it held that the LWS did not incorporate the LEDL's carve-out for employers with fewer than 20 employees.

Several district courts have considered whether the LEDL's nonprofit exclusion extends to the LWS. Most have concluded that it does not,[28] though

---

[23] *Hanna v. Shell Expl. & Prod., Inc.*, 234 So. 3d 179, 188–89, 191 (La. Ct. App. 2017). *Hanna* was decided by a three-judge panel. Two of the judges concurred in the result but did not join the court's opinion.

[24] *Hunter v. Rapides Par. Coliseum Auth.*, 158 So. 3d 173, 177 (La. Ct. App. 2015).

[25] LA. STAT. ANN. § 23:302 (emphasis added).

[26] *Id.* § 23:302(2).

[27] *Hunter*, 158 So. 3d at 177–78 (internal citation omitted).

[28] *See, e.g.*, *Miller v. Upper Iowa Univ.*, No. 19-00039, 2020 WL 882047, at *7–*10 (W.D. La. Feb. 21, 2020); *Norris v. Acadiana Concern for Aids Relief Educ. & Support*, 421 F. Supp. 3d 399, 403–06 (W.D. La. 2019); *Terry v. Acadiana Concern for Aids Relief Educ. & Support Inc.*, No. 18-01508, 2019 WL 2353226, at *7–*11 (W.D. La. Apr. 26, 2019), *report and recommendation adopted in part, rejected in part* 2019 WL 2353176 (W.D. La. May 31, 2019),

a handful have extended the carve-out to the LWS.[29] "The cases that have incorporated the LEDL's carve-out for non-profit organizations into the Whistleblower Statute do not consider the statutory text of either act and the context of the carve-outs but instead merely rel[y] on *Johnson*, *Dronet*, and other cases that looked solely to the" LEDL's clause defining "employer."[30] Indeed, neither they nor Christwood nor the amicus provide "an independent textual analysis of the LEDL's carve-out provisions."[31]

We apply both approaches employed by Louisiana's circuit courts. The Third Circuit's reasoning in *Hunter* does not support extending the nonprofit exception, as the LEDL's definition of employer and the nonprofit exception apply only to a chapter that does not include the LWS. The logic of *Dronet* (and by extension the Second and Fourth Circuit) provides no support either. First, tax status plays no part in the ordinary meaning of "employer."[32] Even under the LEDL, nonprofits are employers; the statute only says that they are not subject to the LEDL.[33] Next, per the Louisiana Civil Code, we interpret "[l]aws

---

*appeal dismissed on other grounds*, No. 19-30547, 2019 WL 7494395 (5th Cir. Aug. 6, 2019); *Upshaw v. Bd. of Supervisors of S. Univ. & Agr. Coll.*, No. 10-184, 2011 WL 2970950, at *4 (M.D. La. July 19, 2011); *Knighten v. State Fair of La.*, No. 03-1930, 2006 WL 725678 (W.D. La. Mar. 21, 2006); *Guy v. Boys & Girls Club of Se. La., Inc.*, No. 04-2189, 2005 WL 517503, at *3–*4 (E.D. La. Feb. 16, 2005).

[29] *Sebble v. NAMI New Orleans, Inc.*, No. 17-10387, 2018 WL 929604, at *2 (E.D. La. Feb. 16, 2018); *Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, No. 10-584, 2011 WL 6046984, at *2 (M.D. La. Dec. 6, 2011); *Jackson*, 2002 WL 1482756, at *6.

[30] *Miller*, 2020 WL 882047, at *10 (quoting *Norris*, 421 F. Supp. 3d at 406) (citing *Sebble*, 2018 WL 929604; *Jackson*, 2002 WL 1482756)).

[31] *Id.* (quoting *Norris*, 421 F. Supp. 3d at 406).

[32] *See, e.g.*, *Employer*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "employer" as "[a] person, company, or organization for whom someone works; esp., one who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages"); *Employer*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/employer (last visited July 22, 2020) (defining employer as "one that employs or makes use of something or somebody . . . . *especially* : a person or company that provides a job paying wages or a salary to one or more people").

[33] LA. STAT. ANN. § 23:302(2)(b).

on the same subject matter . . . in reference to one another."[34] To be sure, anti-discrimination statutes and whistleblower statutes concern *similar* subject matter—protecting employees from adverse actions—and this might justify *Dronet's* importation of the LEDL's definition of "employer." But the statutes do not concern the *same* subject matter, and similarity alone is not enough to justify incorporating all of the LEDL's exceptions and their underlying policy judgments. We therefore decline to extend the LEDL's exception for non-profits to the LWS.

As it is clear that Christwood was Sanders's employer, we need not decide whether the LEDL's definition of employer applies to the LWS. If it does, Christwood is Sanders's employer, as it "receiv[ed] services from [her] and, in return, g[ave] [her] compensation."[35] If it does not, we might look to the ordinary meaning of "employer"[36] or follow Louisiana case law, holding that "the most important element to be considered is the right of control and supervision over an individual."[37] Christwood was Sanders's employer under these approaches as well.

Because the district court concluded that Christwood was not an employer, it did not address the remainder of the Sanders's LWS claim. In deference to the trial court's responsibility to review the record in the first instance, we vacate the dismissal of Sanders's LWS claim and remand for further proceedings consistent with this opinion as it relates to that claim.

---

[34] *Dronet*, 2000 WL 1720547, at \*1 (quoting LA. CIV. CODE ANN. art. 13).

[35] LA. STAT. ANN. § 23:302(2).

[36] *Id.* § 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language."); *see also* LA. CIV. CODE ANN. art. 11 ("The words of a law must be given their generally prevailing meaning.").

[37] *See Ray*, 859 So. 2d at 272.

No. 19-30550

**IV**

We affirm the district court's dismissal of Sanders's discrimination claims, vacate the dismissal of her LWS claim, and remand for further proceedings.