# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2024

Lyle W. Cayce
Clerk

No. 22-40841

Kelly Stevenson-Cotton; Estate of Ronald Glen Cotton, Jr.,

*Plaintiffs—Appellants*,

*versus*

Galveston County; Henry Trochesset, *Galveston County Sheriff*; Dr. Garry Killyon; Dr. Kathy White, *also known as* Kathy Jean Jordan; Boon-Chapman Benefit Administrators, Incorporated; Soluta, Incorporated; Soluta Health, Incorporated,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-98

---

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

Per Curiam:[*]

This case arises out of Ronald Cotton Jr.'s ("Cotton") death during his detention in the Galveston County Jail on March 14, 2019. Appellant

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40841

Kelly Stevenson-Cotton ("Stevenson-Cotton"), as the representative of Cotton's estate, filed suit against Galveston County, the Galveston County Sheriff, and the County Jail's private medical contractors. The district court granted summary judgment as to all of Stevenson-Cotton's federal claims and remanded the remaining state law claims because it determined that no reasonable jury could find deliberate indifference on the part of any defendant. Because we find no error, we AFFIRM.

## I.

For over a decade before his death, Cotton struggled with psychiatric disorders, including bipolar disorder and psychosis. Cotton was diagnosed with diabetes, hypertension, and hypertriglyceridemia in December 2013. In the summer of 2016, Cotton was arrested and incarcerated in the Galveston County Jail. At intake, Cotton informed the jail's medical unit of his history of hypoglycemia and that he took nighttime medications to control his diabetic condition. He was released later that year.

## A.

On January 3, 2019, Cotton was arrested again on charges of assault, criminal mischief, unlicensed possession of a firearm, and burglary following a mental health episode. The following day, Cotton was booked at the Galveston County Jail (the "Jail"). At intake, Cotton reported to staff that he had been diagnosed and treated for psychosis, ADHD, and mental illness, but he denied having a history of diabetes. During his detention, Cotton experienced gastrointestinal issues that worsened over the span of two and a half months. In his first month at the County Jail, Cotton sought and received medical treatment on several occasions.

On January 13, 2019, Cotton first complained of abdominal pain to a registered nurse in the Jail's medical unit. The nurse took an electrocardiograph exam of Cotton that revealed he had a "Normal Sinus

No. 22-40841

Rhythm" and then discharged him, noting his status as "in stable condition" without need for further medical attention. The nurse also noted that Cotton "denied [having a] history of heart problems." Cotton again notified the Jail's medical staff that he was experiencing abdominal pain on January 25, 2019. Cotton was examined by a licensed vocational nurse ("LVN") who determined that Cotton was in stable condition. The LVN advised Cotton to take milk of magnesia twice a day to aid his digestive process and drink more fluids.

Cotton again sought care for constipation concerns on March 6, 2019. An LVN examined Cotton and advised him to continue his course of milk of magnesia and notify the clinic if he did not have a bowel movement in the coming days. On March 12, 2019, Cotton sought and received care twice in the medical unit. That morning, Cotton reported to an LVN that he had continued constipation and chest pain in his sternum area. The LVN reported on Cotton's chart that Cotton stated that he thought he was having acid reflux from eating chili the night before. The LVN determined that Cotton's condition was stable because his chest pains had subsided during his visit to the medical unit. Cotton was advised to refrain from meals with high sodium content and to "sit up for at least one hour after meals."

Later that evening, Cotton sought medical care again because he had vomited and had been constipated for ten days without any bowel movements. A sheriff's deputy informed the LVN that Cotton's vomit contained blood. Cotton informed the LVN that the milk of magnesia did not help his constipation and the LVN found that his bowels seemed "sluggish." The LVN then alerted the physician on duty, Dr. Garry Killyon, of Cotton's condition and Dr. Killyon prescribed a fiber supplement and daily laxative tablet. The following morning, Cotton vomited several times. A deputy reported his condition to the medical unit at 12:04 p.m. The deputy took

3

Cotton to the medical unit, and Cotton informed the nurse that he had not eaten in days. Cotton had an elevated heartrate and tenderness in his stomach. The nurse then informed Dr. Killyon of Cotton's symptoms and continued complaints of constipation. Dr. Killyon then ordered an abdominal X-ray for Cotton for the following day, March 14.

**B.**

In the afternoon of March 13, 2019, Cotton again vomited and Dr. Killyon directed the deputy to bring the contents of any further vomit to him for further evaluation. Around 5 p.m., a nurse was called to Cotton's cell because he was found dry heaving and had collapsed on the floor. Cotton complained of extreme pain and requested to be taken to the local University of Texas Medical Branch hospital ("UTMB"). Cotton also reported dry lips and that he had not had anything to eat or drink in days. The nurse responded that Cotton had previously stated that he had some "chili and soups" the day prior, but Cotton denied saying so. The staff escorted Cotton to the medical unit for Dr. Killyon to treat him.

Dr. Killyon gave Cotton magnesium citrate, started him on oxygen, and performed a rectal examination. The exam did not reveal any stool in Cotton's rectal vault. Dr. Killyon repeatedly tried to start an IV drip on Cotton but could not find a vein to start the drip. Dr. Killyon ordered Cotton's non-emergent transit[1] to UTMB at 5:45 p.m., and fifteen minutes later, Cotton left for the hospital. Cotton arrived at UTMB at 6:38 p.m., and Cotton informed the nurses there that he was thirsty and had suffered from chest pains for about a week. At UTMB, Cotton denied having a history of diabetes and initially refused care, expressing that he believed he was only

---

[1] Non-emergent transfer refers to the use of a deputy squad care to transport a detainee to the UTMB hospital instead of calling for an emergency services vehicle.

dehydrated. The UTMB staff convinced Cotton to stay for further testing because they perceived that he was suffering from something more complex.

At 9:20 p.m., Cotton's lab results came back, and he was transferred to UTMB's intensive care unit for diabetic ketoacidosis. Around midnight, Cotton's blood pressure dropped sharply and he started vomiting. The UTMB staff moved him to the trauma unit where he was intubated, and CPR was started. The UTMB staff attempted multiple lifesaving measures including CPR, epinephrine shots, and defibrillations until 12:44 a.m. on March 14, 2019. Cotton was declared dead at that time. The UTMB staff concluded that his cause of death was diabetic ketoacidosis.

## C.

On March 16, 2021, Stevenson-Cotton filed the instant lawsuit in state court against Appellees Galveston County (the "County"), Galveston County Sheriff Henry Trochesset ("Trochesset") (collectively, the "County Defendants"), Dr. Killyon, Dr. Teresa Becker ("Becker"), Dr. Erin Barnhart ("Barnhart"), Boon-Chapman Benefit Administrators, Inc. ("Boon-Chapman"), Soluta, Inc. ("Soluta"), Soluta Health, Inc. ("Soluta Health"), Terry Haneline ("Haneline"), and Kathy White a/k/a Kathy Jean Jordan ("White") (collectively, the "Medical Defendants"). The defendants removed the case to federal district court on April 23, 2021. Stevenson-Cotton alleged that the defendants deprived Cotton of his Fourth, Eighth, and Fourteenth Amendment rights based on theories of deliberate indifference to his health emergency and unconstitutional conditions of confinement. Stevenson-Cotton voluntarily dismissed her claims against Becker and Barnhart on September 7, 2021.

In August 2022, the County Defendants and Medical Defendants moved for summary judgment on Stevenson-Cotton's § 1983 claims. They argued that Stevenson-Cotton failed to create a fact issue regarding

deliberate indifference on the part of any individual or institutional defendant. All parties submitted expert reports that offered competing views on whether the alleged delay in providing Cotton with qualified medical care from physicians was a material factor in his ultimate death.

On November 29, 2022, the district court granted both motions for summary judgment on all Stevenson-Cotton's federal claims and remanded the remaining state law claims to state court. The district court construed Stevenson-Cotton's pleadings as asserting individual liability against Dr. Killyon for constitutional deprivations stemming from his "episodic acts or omissions" and against the other institutional defendants for implementing policies that created unconstitutional conditions of confinement. The district court determined that no reasonable jury could find that (1) Dr. Killyon treated Cotton with deliberate indifference to his medical needs, (2) the LVNs' treatment of Cotton constituted deliberate indifference, or (3) the County Defendants' and Medical Defendants' lack of an emergency transfer policy for detainees violated Cotton's Fourteenth Amendment rights.

On appeal, Stevenson-Cotton argues that there is sufficient evidence creating a material fact dispute as to whether any defendant acted with deliberate indifference to Cotton's serious medical needs either through acts or omissions and in setting policies requiring LVNs as opposed to licensed physicians to screen patient complaints and in utilizing non-emergent transfers to UTMB. We disagree.

## II.

We review a district court's grant of summary judgment de novo. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing FED. R. CIV. P. 56(a)). A dispute regarding a material fact

6

No. 22-40841

is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A plaintiff's subjective beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment. *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted).

## III.

The Eighth Amendment provides substantive protection for individuals who are convicted prisoners, and due process owed under the Fourteenth Amendment protects pretrial detainees. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). In the Fifth Circuit, the analysis for each category of claims is the same because our "Fourteenth Amendment case law concerning pretrial detainees" is derived from "the Supreme Court's Eighth Amendment precedent concerning prisoners." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (cleaned up) (citing *Hare*, 74 F.3d at 643–44). Pretrial detainees are afforded a constitutional right under the Due Process Clause of the Fourteenth Amendment "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). The law of this circuit recognizes two types of pretrial detention due process claims: (1) episodic acts or omissions, and (2) conditions of confinement. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).

No. 22-40841

Stevenson-Cotton advances both an episodic acts or omissions claim against Dr. Killyon and a conditions-of-confinement claim against the County Defendants, Dr. Killyon, and Boon-Chapman. We address each claim in turn.

**A.**

In a due process claim based on episodic acts or omissions against an individual defendant, a plaintiff must establish that the official in question acted with subjective deliberate indifference. *See id.* To establish subjective deliberate indifference, the plaintiff must create genuine disputes of material fact as to two elements at the summary judgment stage. *See id.*; *Baughman v. Hickman*, 935 F.3d 302, 307 (5th Cir. 2019). First, the official must be aware of facts from which the inference could be drawn that a substantial risk of harm exists. *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc). Second, the official "must also draw the inference." *Id.* The official conduct must be "wanton" or "reckless." *Id.* Subjective deliberate indifference is an extremely high bar. *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Notably, we have held that "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *James v. Harris Cnty.*, 577 F.3d 612, 617–18 (5th Cir. 2009) (internal quotation marks and citation omitted). With respect to medical care of pretrial detainees, we have consistently held that unsuccessful treatment or even medical malpractice does not meet the standard of "a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Upon review of the parties' arguments, the record, and the governing caselaw, we find that Stevenson-Cotton has failed to meet this high bar to create a genuine dispute of material fact that Dr. Killyon was deliberately indifferent to Cotton's serious medical needs. *Id.*

Stevenson-Cotton argues that Dr. Killyon inappropriately delayed a course of insufficient care although information about Cotton's serious medical needs was easily ascertainable. Citing *Taylor v. Stevens*, 946 F.3d 211, 221 (5th Cir. 2019), she contends that Cotton's deteriorating physical condition and his medical intake files from his previous detention in the Galveston County Jail constituted an obvious risk of serious harm from his medical condition. She asserts that the district court erred in determining that no reasonable jury could find that Dr. Killyon deprived Cotton of his constitutional rights simply because Cotton failed to mention his history of diabetes on his intake forms and the fifty-three-minute delay in getting Cotton to UTMB in non-emergency transport did not constitute deliberate indifference. She further argues that the district court erred by misinterpreting several assertions in her opposition as concessions that Cotton did not have an active history of diabetes.

Barring any misunderstanding about Stevenson-Cotton's opposition to summary judgment, we conclude that the district court appropriately determined that she failed to demonstrate a genuine dispute of material fact on this issue. As stated above, we have held that even gross negligence in medical treatment is insufficient to constitute deliberate indifference. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Cotton was seen numerous times by LVNs and the consistent availability and willingness of the Jail's medical unit to treat him does not "clearly evince a wanton disregard for any [of his] serious medical needs." *Johnson*, 759 F.2d at 1238 (holding no deliberate indifference where prisoner's medical records show that he was routinely treated by the medical unit during his detention). Thus,

No. 22-40841

we hold that the district court's summary judgment as to Stevenson-Cotton's episodic acts or omissions claim was appropriate.[2] *Id.*

**B.**

Stevenson-Cotton's conditions-of-confinement claim fares no better. A conditions-of-confinement claim is a constitutional challenge made on the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644. The central question is whether the conditions of the detainee's confinement amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). When challenging a condition of confinement, a plaintiff must show that: (1) some rule, restriction, identifiable intended condition or practice, or a pervasive pattern of acts or omissions committed by a jail official exists, (2) that is not reasonably related to a legitimate governmental objective, and (3) that causes a violation of a detainee's constitutional rights. *See Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011). We have recognized that "the reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic" acts or omissions cases. *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (en banc) (internal quotation marks and citation omitted).

Conditions of detention centers are usually the product of an explicit policy or restriction, such as disciplinary plans, mail privileges, and the

---

[2] Furthermore, the caselaw Stevenson-Cotton cites in support of her arguments on appeal are factually inapposite here. For example, in *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006), this court held that a prison official acted with deliberate indifference to an inmate's medical needs where she refused to treat the inmate even though she knew of his heart condition and the fact that he was experiencing severe chest pain and did not have his prescribed heart medication. *Id.* at 463–65. Here, no individual defendant had knowledge of Cotton's history of diabetes.

number of bunks per cell. *See Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). In the absence of an explicit policy, a plaintiff may prove that a condition reflects an unstated or de facto policy by pointing to evidence of a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [detention] officials, to prove an intended condition or practice." *Id.* (quoting *Hare*, 74 F.3d at 645). Proving a de facto policy from a pattern of activity "is a heavy burden, one that has rarely been met in our caselaw." *Id.* Additionally, "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Id.* at 454.

Stevenson-Cotton asserts that Dr. Killyon and the County Defendants created unconstitutional conditions of confinement by (1) maintaining a de facto policy to provide insufficient care to detainees, (2) adopting a policy to use non-emergent vehicles to transfer detainees to UTMB, and (3) requiring LVNs instead of licensed physicians to screen detainees when they request care. We disagree with each assertion. As an initial matter, this court has rejected the argument that a jail's policy mandating LVNs to screen detainees before seeing a higher-level medical professional creates an unconstitutional condition of confinement. *See Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 469 (5th Cir. 2015) (rejecting argument that a multi-tiered health services system using LVNs to screen detainees' medical complaints violated their due process rights). Second, Stevenson-Cotton has failed create a genuine dispute of material fact on this record that the Jail has a policy or practice of non-emergent transfers. *See id.* at 465–66; *Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 309 (5th Cir. 2020) ("[I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."). Assuming arguendo that Stevenson-Cotton has created a genuine dispute of material fact that a non-emergent transfer policy existed, there is not

sufficient evidence to show a material fact dispute that the policy was constitutionally deficient. *But see Duvall*, 631 F.3d at 208 (holding that a de facto policy exposing detainees to disease known to jail officials was sufficient to show punishment in violation of the detainee's constitutional rights). For these reasons, in addition to the reasons articulated above in our episodic acts or omissions analysis, we conclude that Stevenson-Cotton's evidence falls short of showing that the County Defendants and Medical Defendants violated Cotton's constitutional rights. *Cf. Scott*, 114 F.3d at 54.

## IV.

In sum, we hold that the district court appropriately granted summary judgment in favor of all Defendants on Stevenson-Cotton's claims because no rational jury could have found that any of the defendants acted with deliberate indifference to Cotton's serious medical needs. Therefore, we AFFIRM.