# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2023

Lyle W. Cayce
Clerk

No. 22-50600

Diann H. Angus,

*Plaintiff—Appellant*,

*versus*

Alejandro Mayorkas, *Secretary, U.S. Department of Homeland Security*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-242

Before Smith, Higginson, and Willett, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:[*]

Between 2012 and 2017, Plaintiff-Appellant Diann Angus applied to three job openings posted by Immigration and Customs Enforcement ("ICE"), an agency within the Defendant-Appellee Department of Homeland Security ("DHS"). Angus was not selected for any of these positions. According to Angus, these non-selections were the result of

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50600

various forms of discrimination and retaliation. Eventually, after attempting to pursue an administrative remedy, Angus filed suit. The district court dismissed fourteen of her fifteen claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and later granted summary judgment in favor of DHS on the surviving retaliation claim, Angus timely appealed, and we now AFFIRM.

I.

This case arises out of Plaintiff-Appellant's so-far unsuccessful pursuit of her ultimate career goal—working as an intelligence research specialist for the federal government. As alleged in her complaint, Angus thrice applied for positions related to intelligence research at ICE and was rejected each time.[1]

First, in 2012, she applied for both the Intelligence Research Specialist and Intelligence Assistant positions at ICE. When she applied for these positions, Angus requested to be placed on the "Schedule A" certificate.[2] Under the "Schedule A" hiring authority, "[a]n agency may [non-competitively] appoint, on a permanent . . . basis, a person with an

_____

[1] Because Angus appeals both the dismissal of claims under Rule 12(b)(6) and a grant of summary judgment in favor of DHS, we divide this background section between the allegations in the complaint and the facts produced at summary judgment.

[2] A certificate is a list of all candidates who are minimally eligible for a given position under a specific hiring authority. So, for example, as in this case, there may be one certificate listing all eligible "competitive merit selection" candidates and one containing a list of all eligible "Schedule A" candidates. These certificates are compiled through the following process. First, each USAJOBS (the hiring platform for federal positions) applicant is asked a series of questions related to federal employment, experience, and education. Based on the applicant's answers, USA Staffing—a hiring platform for ICE—automatically generates selection certificates for each designated hiring authority. A Human Resources specialist will then review these certificates and verify that each applicant is eligible under the hiring authority and qualifies for the position before forwarding the selection certificate to the selecting official.

No. 22-50600

intellectual disability, a severe physical disability, or a psychiatric disability."[3] 5 C.F.R. § 213.3102(u)(1); *see id.* § 213.3101. As Angus acknowledges, the Schedule A hiring authority is meant to allow agencies to proactively recruit and hire certain individuals, including those with disabilities.

However, although Angus qualified for the Schedule A certificate, she was also eligible for inclusion on the competitive service certificate for these positions. Pursuant to ICE policy, her applications were therefore forwarded to the selecting official, Special Agent in Charge for San Antonio Homeland Security Investigations Jerry Robinette, under the competitive service certificate. In other words, the selecting official was not informed that she was a Schedule A candidate with a targeted disability.

On October 16, 2012, Angus was informed that she was not selected for the Intelligence Research Specialist position, and on November 9, 2012, was similarly notified that she was not selected for the Intelligence Assistant position. Angus contacted an EEO counselor as to both non-selections on December 4, 2012. Then, on March 19, 2013, Angus filed a formal complaint with the ICE Equal Opportunity Office ("EEO"), alleging that her non-selections were the result of discrimination based on sex, age, and disability, as well as for retaliation for prior EEO activity.[4] On January 30, 2019, DHS issued a Final Agency Decision, later affirmed by the EEOC, concluding that

---

[3] An individual may also be eligible under Schedule A hiring authority if they satisfy other criteria, none of which is applicable to Angus. *See* 5 C.F.R. § 213.3102.

[4] According to the complaint, Angus had filed an earlier EEO complaint related to her non-selection for an ICE position in 2010. This prior complaint formed the basis of her retaliation claim.

Angus's claims were untimely and that, in any event, ICE did not discriminate or retaliate against her.[5]

In 2016 or 2017, Angus again applied for the position of an Investigative Research Specialist at ICE. On January 24, 2017, Angus was once more informed that she was not selected for the position. Angus reached out to an EEO counselor on May 4, 2017, and soon after, on June 16, 2017, filed another formal complaint with the ICE EEO related to this non-selection. This time, Angus alleged sex and age discrimination (but not disability discrimination) as well as a retaliation claim. In February 2020, DHS resolved the complaint by issuing a Final Agency Decision affirming the dismissal of her case based on her intent to file a federal action.

Soon after, in March 2020, Angus filed a 49-page *pro se* complaint in federal court. The complaint contained fifteen overlapping "counts" against DHS, alleging various claims for disability, sex, and age discrimination, as well as for improper processing of her EEO complaints and for retaliation. DHS moved to dismiss all the claims pursuant to Rule 12(b)(6). The district court, adopting the report and recommendation of the magistrate judge, granted the dismissal as to fourteen claims but denied the motion as to Angus's retaliation claim.

Following discovery, both DHS and Angus moved for summary judgment on the remaining retaliation claim. In connection with these motions, both parties produced more evidence as to the circumstances surrounding each of Angus's non-selections. We address each in turn, beginning with Angus's 2012 applications.

---

[5] Although Angus initially requested a hearing before the Equal Employment Opportunity Commission ("EEOC"), she later asked that her case be remanded to DHS for a final agency decision.

No. 22-50600

First, as to the position of Intelligence Research Specialist, Robinette received over one hundred applications for four positions. Although Robinette was the selecting officer, he delegated the task of screening resumes, conducting interviews, and making a final recommendation to two other officials, Assistant Special Agent in Charge Sammy Ashurst and Supervisory Intelligence Officer David Salazar. Neither Ashurst nor Salazar was aware of Angus's prior EEO activity.

When she applied to the 2012 positions, Angus, who had an associate's degree in liberal arts from Louisiana Tech University, was at GS-8 with sixteen years of federal experience.[6] Much of her experience was administrative and primarily included preparing, updating, and maintaining files.[7] Although Angus self-classified her work in these positions as "intelligence work" because she was privy to nonpublic information, she admitted that her work was not as "in depth" or "fully involved" as intelligence work. Additionally, there were numerous punctuation and grammatical errors in the resume attached to her application.

The four selected candidates were J.W., A.K., R.K., and N.R. According to Ashurst, the position was "very competitive," and Angus was not interviewed because "other candidates were more qualified than her." Salazar also stated that, "[t]o the best of [his] recollection[,] Ms. Angus did

---

[6] The General Schedule ("GS") classification system is a 15-grade scale which governs the qualifications, pay structure, and other human resources policies for federal employees, with GS-1 being the lowest grade and GS-15 being the highest.

[7] Angus held the following positions: Mail and File Clerk at the Immigration and Naturalization Service ("INS") (1996-1997); Immigration Records Technician at INS (1997-1998); Investigations Clerk at ICE (1998-2006); Investigative Assistant at ICE (2006-2010); Office Assistant at the Drug Enforcement Agency ("DEA") (2010-2011); and Investigative Support Assistant at the U.S. Secret Service (Angus's position at the time of her 2012 applications).

not have the qualifications sought after" for the position because she lacked an intelligence background.

J.W. was the only selected candidate who was employed by ICE when he applied. In his role as a mission support specialist at ICE, J.W. had received positive feedback from colleagues and supervisors. He had a military background, having earned an associate's degree in instruction of technology and military science and served in the United States Air Force for six years.

A.K. had a comparable background. She held a bachelor's degree in business administration and two associate's of applied science degrees (one in Instructor of Technology and Military Science, the other in Communication Applications Technology). She had also spent time (ten years) in the military. Additionally, A.K. had thirteen years of experience in the intelligence field, and had, in her prior position as a criminal investigative analyst with the Texas Air National Guard, worked with ICE.

Similarly, R.K. had a military and intelligence background. Specifically, R.K. had served in the United States Marine Corps as an Arabic linguist, and reconnaissance expert. Moreover, R.K. had had previously worked with ICE Intelligence Research Specialists as an analyst consultant with a private contractor. At the time of his application, R.K. was finishing his bachelor's degree and was an analyst consultant with a private company.

Finally, and as with the other selected candidates, both N.R.'s educational and work experience related to the military and intelligence fields. Specifically, N.R. had a Bachelor of Science degree from the United States Air Force Academy, had served as a United States Army Military intelligence officer, and had worked as a military intelligence company commander in Iraq.

As to the Intelligence Assistant position, Robinette received over 60 applications for one opening. Ultimately, Robinette offered the job to J.C.,

who held both a bachelor's and master's degree. J.C. had twenty-eight years of federal service and was currently employed as an Administrative Officer in the Houston office at a GS-14. J.C. was highly recommended by her current supervisor, who told Robinette that J.C. was willing to apply to a lower level because she was relocating to the Austin area. Robinette also believed that J.C.'s prior experience as an Administrative Officer would be an asset to the Austin office, which often needed additional administrative support.

As noted, Angus filed an EEO complaint after she was not selected for either position. During the resulting investigation, an EEO investigator contacted Robinette, who had since retired. Robinette responded by email, stating that "[I] can assure you my selection of candidates were [sic] based on who [was] the best candidate for the overall job and position." He then noted that "[his] recollection [was] that this employee [Angus] use[d] to work for one of [his] offices" and "ha[d] been applying for multiple vacancies and when not selected she file[d] a discrimination allegation." Robinette then reiterated that he stood behind the selections and did not discriminate or retaliate against Angus.

Over 70 candidates applied for the one open Intelligence Research Specialist in 2016/2017. Three individuals were involved in the selection. First, Ashurst and Group Supervisor Todd West reviewed the submitted resumes and selected the top five candidates. Then, Ashurst, West, and Assistant Special Agent in Charge Monica Mapel conducted the interviews. The panel selected T.H., who was described as "far exceed[ing] the qualifications" required, to fill the position.

As with the candidates selected for the Intelligence Research Specialist position in 2012, T.H. had prior military and intelligence experience. His experience included time spent as an intelligence research

specialist for the U.S. Coast Guard, an open-source intelligence analyst with the U.S. Marine Corps Forces Cyber Command, and an all-source intelligence analyst at the U.S. Northern Command. He had also held positions in Signals Intelligence ("SIGINT"), was fluent in both Spanish and Portuguese, and held a bachelor's degree.

After considering the record and both parties' arguments, the magistrate judge recommended granting summary judgment in favor of DHS and dismissing Angus's motion for summary judgment as moot.[8] The district court again adopted the report and recommendation in full and entered a final judgment in favor of DHS. Angus timely appealed.

## II.

We first address the claims dismissed by the district court before turning to the district court's grant of summary judgment on the remaining claim.

## A.

We review a grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). In so doing, we "accept[] all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff." *Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[8] Specifically, the magistrate judge found that Angus failed to exhaust her retaliation claims as to her 2012 non-selection for the Intelligence Research Specialist position and 2016/2017 non-selection for the Investigative Research Specialist position, and concluded that Angus's retaliation claim as to her 2012 non-selection for the Intelligence Assistant position failed on the merits.

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

i.

We begin with Angus's claims for disability discrimination, which can be broadly sorted into two groups. First, Angus asserted claims for disparate treatment, all related to her own non-selections and all stemming from ICE's failure to forward her applications to the selecting officer under the Schedule A certificate. Second, and similarly, Angus asserted claims for disparate impact, alleging that ICE's policy of not placing candidates who qualify for both the Schedule A certificate *and* the competitive service certificate on both certificates, but rather only forwarding the candidate's application under the competitive service certificate, disparately impacted Schedule A applicants with disabilities.

First, we must address the threshold issue of exhaustion. A plaintiff must exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC before filing an ADA claim in federal court. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017). When determining whether a plaintiff has exhausted a claim, we consider not only those claims contained in the administrative charge, but also those that could have reasonably grown out of the charge. *Pacheo v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).[9]

The ADA recognizes claims for both disparate treatment and disparate impact. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003). Disparate-treatment and disparate-impact claims address "two largely

---

[9] Although *Pacheo* addresses the exhaustion requirement for Title VII claims, the ADA incorporates by reference Title VII's administrative procedures. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam).

separate theories of discrimination." *Pacheo*, 448 F.3d at 787 (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). A disparate-treatment claim, "the most easily understood type of discrimination," *Int'l Brotherhood*, 431 U.S. at 335 n.15, arises where a plaintiff alleges that an employer treated individuals less favorably than others on account of their protected class (here, disability). *Raytheon*, 540 U.S. at 52 (citing *Int'l Brotherhood*, 431 U.S. at 335 n.15)). That is, "[l]iability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the employer's decision.'" *Id.* (alteration in original) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). "By contrast, disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Id.* (quoting *Int'l Brotherhood*, 431 U.S. at 335 n.15).

Here, Angus failed to exhaust her administrative remedies as to any disparate-impact claims. Her 2013 EEO complaint referenced only her own non-selections, with no mention of any facially neutral policy or practice affecting other candidates with disabilities.[10] Accordingly, the ICE Office of Diversity and Civil Rights limited the scope of its inquiry to "[w]hether complainant . . . was subjected to discrimination . . . when the agency did not select *her*," and DHS's Final Agency Decision expressly referred to her claims regarding her non-selections as "disparate treatment claims." Because we do not find that a disparate-impact claim could "reasonably have been expected to grow" from this administrative charge, *see, e.g.*, *Pacheo*, 48

---

[10] Angus's 2017 EEO complaint did not mention disability discrimination and instead asserted only claims for sex and age discrimination, as well as for retaliation.

F.3d at 792, we find that the district court correctly found that Angus did not exhaust her disparate-impact claims.

Turning to the merits of Angus's remaining disability discrimination claims, Angus failed to state a claim for which relief could be granted. Angus's disability discrimination claims were all rooted in ICE's alleged policy of declining to place job applicants (including her) on the Schedule A certificate when they otherwise qualify for placement on another certificate (in her case, the competitive service certificate). On appeal, Angus reiterates this argument, essentially contending that an agency engages in disability discrimination when it fails to proactively prioritize applicants with a disability.

Schedule A is a hiring authority that allows agencies to non-competitively fill certain positions. *See* 5 C.F.R. § 213.3102(u). As other courts have recognized, Schedule A authority is permissive, not mandatory. *See Ward-Johnson v. Glin*, No. 19-CV-00534, 2020 WL 2770018, at *9 (D.D.C. May 28, 2020) ("But the regulation's language is permissive; there is no obligation to hire a disabled applicant."); *see also Hylton v. Calabria*, No. 17-2023, 2020 WL 6134673, at *8 (D.D.C. Oct. 19, 2020). Put another way, although Schedule A gives agencies a "means to avoid competitive placement," it "does not impose an obligation to use this authority in any specific case." *MacDonald v. Cohen*, 233 F.3d 648, 653 (1st Cir. 2000) (citing *Van Wersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1146 (Fed. Cir. 1999)). Thus, contrary to Angus's contention, the regulation does not confer a "civil right" to be on the Schedule A certificate such that the failure to utilize the Schedule A hiring authority can, on its own, sustain a cause of

action for discrimination.[11] Accordingly, the district court properly dismissed her disparate-treatment claims for failure to state a claim.[12]

For these reasons, we AFFIRM the district court's dismissal of Angus's claims for disability discrimination.

### ii.

Next, Angus brought several claims challenging ICE's actions in processing and investigating her EEO complaints. Specifically, Angus alleged that ICE's EEO office (the Office of Diversity and Civil Rights) failed to timely process her complaints, properly document aspects of its investigation, cooperate in discovery, and follow the EEOC's administrative judge's orders. She further alleged that the EEO investigators were improperly biased. As the district court accurately noted, however, neither Title VII nor any of the statutes or regulations upon which Angus relies confers a right of action for improper investigation or processing of a federal administrative employment discrimination complaint. *Gibson v. Mo. Pac. R.R. Co.*, 579 F.2d 890, 891 (5th Cir. 1978) (holding that Title VII does not confer a right of action against the EEOC for improper investigation or processing of an employment complaint); *see also Daniels v. Caldera*, 237 F.3d 631, 2000 WL 1701699, at *3 (5th Cir. 2000) ("There is no compelling justification to confer upon federal employee plaintiffs an 'improper complaint processing'

---

[11] In her briefing, Angus appears to believe that, had she been considered for the open positions under the Schedule A certificate, she would have been hired. She does not, however, otherwise plead that her (or others') non-selection was *because* of her disability—in other words, her only evidence of discrimination is ICE's alleged failure to use its Schedule A hiring authority.

[12] We note that Angus's disparate-impact claims are similarly premised upon ICE's failure to place qualified candidates with disabilities on the Schedule A certificate in addition to the competitive service certificate. Accordingly, these claims, even if they had been properly exhausted, would fail for the same reasons as her disparate-treatment claims.

No. 22-50600

cause of action under Title VII . . . .”). We therefore AFFIRM the district court's dismissal of these claims.

iii.

Angus's complaint also contained a single count of sex discrimination. Title VII prohibits discrimination in hiring on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). Where there is no direct evidence of intentional discrimination, a plaintiff must establish a *prima facie* case of sex discrimination by showing "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably."[13] *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

Although Angus satisfactorily alleged the first three requirements of a *prima facie* claim for sex discrimination, she failed to allege that comparators outside her protected class were treated more favorably in the selection process. While Angus did allege that the selected candidates were outside of

---

[13] Although, at the pleading stage, "an employment discrimination plaintiff need not plead a *prima facie* case of discrimination," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), we have nonetheless found it "helpful to refer to *McDonnell Douglas* to understand whether a plaintiff has sufficiently pleaded an adverse employment action taken "*because of*" [her] protected status." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021); *see also Chhim v. Univ. of Tex.at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a *prima facie* case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible. In that inquiry, it can be helpful to reference the *McDonnell Douglas* framework, on which Chhim would continue to rely if he based his claim on circumstantial evidence[.]"). As in *Olivarez* and *Chhim*, we similarly refer to the *prima facie* elements of a discrimination claim to guide our analysis as to whether Angus has pleaded sufficient facts to support a plausible claim for discrimination.

13

No. 22-50600

her protected class,[14] she failed to allege any other facts as to the candidates' experience, qualifications, or other relevant attributes. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022) (explaining that courts look to a variety of factors, including past performance, job responsibility, experience, and qualifications to determine whether individuals are similarly situated). Nor did Angus otherwise plead that her non-selection was on account of discriminatory animus against her on account of her sex.[15] We thus AFFIRM the district court's dismissal of her sex-discrimination claim.

iv.

Similarly, Angus alleged that her non-selection for the 2012 Intelligence Research Specialist position was the result of age discrimination. Pursuant to the public-sector provisions of the Age Discrimination in Employment Act ("ADEA"), "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). As with a claim for sex discrimination, in the absence of direct evidence of discrimination, a plaintiff must show that (1) she was within the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision (here, non-selection for a position); and (4) she was replaced by someone younger or treated less favorably than similarly situated

---

[14] Angus alleged that three of the four selected candidates for the 2012 Intelligence Research Specialist position were men (the chosen candidate for the 2012 Intelligence Assistant position was a woman), and that ICE hired a man for the 2016/2017 Investigative Research Specialist position.

[15] In her complaint, Angus cited reports indicating that women are underrepresented compared to men at ICE. Yet the existence of a gender gap in employment at the agency does not suffice to show that a given employment decision was motivated by discriminatory animus.

No. 22-50600

younger employees to establish a *prima facie* case of age discrimination.[16] *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003). As with her claim for sex discrimination, although Angus alleged that each of the four selected candidates were "approximately 20 or more years younger than" her, she failed to allege that these candidates were similarly situated to her. Accordingly, we AFFIRM the dismissal of her age-discrimination claim.

## B.

As with a grant of a motion to dismiss, we review a district court's grant of summary judgment *de novo*. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). When reviewing an appeal from summary judgment, we view the facts and evidence in the light most favorable to the non-movant and draw all reasonable inferences in her favor. *Hanks v. Rogers*, 853 F.3d 738, 743-44 (5th Cir. 2017). We may affirm the district court on any ground supported by the record, even if different from the one relied upon by the district court. *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citations omitted).

Only Angus's claim for retaliation under Title VII proceeded to summary judgment. We evaluate a claim for retaliation based on circumstantial, rather than direct, evidence under the burden-shifting

---

[16] *See supra* note 13.

framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). First, Angus must establish a *prima facie* case of retaliation by showing that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her] [here, the failure to hire]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). If she makes this showing, the burden shifts to DHS to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its failure to hire Angus. *Id.* at 557. Should DHS satisfy this burden, Angus "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real. . . retaliatory purpose." *Id.*

Here, assuming Angus established a *prima facie* case of retaliation, DHS provided legitimate, non-retaliatory reasons as to its hiring decisions for each of the three positions to which Angus applied—each of the selected candidates possessed qualifications superior to Angus's.[17] For both the 2012 Intelligence Research Specialist position and 2016/2017 Investigative Research Specialist position, each of the five selected candidates either had prior substantive intelligence experience, military experience, or both. In contrast, Angus, who at the time of her application was not working for ICE, self-admittedly had neither substantive intelligence experience (at best, she had provided investigative assistance and support) nor military experience. Additionally, each candidate had attained greater or more relevant academic

---

[17] Because we can dispose of Angus's retaliation claims on the merits, we need not address the alternative argument that she failed to exhaust any retaliation claims related to her 2012 and 2016/2017 non-selections. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) (holding that prerequisites to suit such as Title VII's charge-filing precondition are not jurisdictional in nature).

achievement than Angus, who had an associate's degree in liberal arts. Similarly, the candidate selected for the 2012 Investigative Assistant position had attained a higher GS level than Angus, had more years of federal service than Angus, and had obtained both a bachelor's and a master's degree. Put plainly, this gap in qualifications is more than enough to demonstrate that DHS had legitimate, non-retaliatory reasons for selecting other candidates over Angus.

Therefore, Angus bore the burden of rebutting DHS's proffered explanation and showing that the reason given was "merely pretextual." *Brown v. Wal-Mart Stores East, LP*, 969 F.3d 571, 578 (5th Cir. 2020). "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Id.* None of the evidence to which Angus points, however, creates an issue of fact as to whether ICE's stated reasons were pretextual.

First, Angus refers to ICE's failure to forward her application under the Schedule A certificate and seemingly implies that this failure was somehow nefarious. These arguments, however, speak not to pretext, but to her already-dismissed claims for disability discrimination.[18]

Next, Angus points to the email from Robinette, written after he had retired from DHS and in response to the EEO investigation, in which he recalled that Angus "ha[d] been applying for multiple vacancies and when not selected she files a discrimination allegation." As a preliminary matter, because Robinette was not involved in the selection process for the

---

[18] To the extent that Angus is implying that the failure to place her application on the Schedule A certificate was retaliation for her prior EEO activity, we note that this argument conflicts with her own disparate-impact claims, which assert that her non-placement on the Schedule A certificate was the result of a general policy at ICE.

2016/2017 position, this email only speaks to the existence of pretext as to the 2012 non-selections.

More importantly, considered in light of the record as a whole, this statement does not constitute evidence of pretext. To begin, it is factually true—at the time Robinette responded to the email, Angus had applied for multiple positions and had filed discrimination allegations as to those non-selections. Additionally, Robinette provided a written declaration stating that, at the time of selection, he had not been aware that Angus was on the list of eligible applicants for the Intelligence Research Specialist position,[19] and that he had never considered any candidate beyond J.C. for the Intelligence Assistant position. An email written more than a year after that decision does not cast doubt upon these statements, nor does it reflect Robinette's state of mind when making the hiring decision.

Finally, Angus appears to argue that some of the selected candidates (specifically, J.W. and J.C.) were not actually qualified for the job. To the extent that Angus contends that she was more qualified than these candidates, as already discussed above, the evidence shows the contrary is true. *See EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."). And, insofar as Angus argues that other candidates misrepresented their qualifications on their own applications, she

---

[19] Indeed, Robinette did not even conduct the interview screening for the position—he had delegated that task to Ashurst and Salazar.

fails to explain how such misstatements demonstrate that ICE's stated reasons for not selecting her were pretextual.[20]

In conclusion, even assuming that Angus's claims have been properly exhausted and that she can establish a *prima facie* case of retaliation, she has failed to show that the proffered reasons for her non-selection were pretextual. We therefore find that the district court properly granted summary judgment in favor of DHS and AFFIRM.

*      *      *

For the foregoing reasons, we AFFIRM.

---

[20] Indeed, Angus concedes that ICE would not have been aware of J.C.'s alleged misrepresentations until December 2012, *after* the positions had been filled.